UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO.: 16-24275-CIV-Moreno/Louis

INVERSIONES Y PROCESADORA
TROPICAL INPROTSA, S.A., a Costa Rican
Corporation,

      Petitioner,

vs.

DEL MONTE INTERNATIONAL GMBH, a
Swiss Corporation,

      Respondent.

_____/

**PETITIONER'S MOTION TO COMPEL RESPONDENT TO PRODUCE
EVIDENCE OF ACTUAL DAMAGES OR DISMISS ITS MOTION FOR CONTEMPT**

      Petitioner, Inversiones y Procesadora Tropical INPROTSA, S.A. ("INPROTSA") hereby moves for the entry of an order compelling Respondent Del Monte International GmbH ("Del Monte") to produce evidence of any actual damages it purportedly sustained as a result of INPROTSA's alleged contemptuous actions or to dismiss its Motion for Contempt [ECF No. 123] (the "Motion for Contempt"). In support of this motion, INPROTSA states as follows:

**INTRODUCTION**

      Pursuant to well-settled law, a compensatory civil contempt sanction must be based on evidence of a party's actual damages. Del Monte, however, has failed to produce any evidence showing that it sustained actual damages as a result of INPROTSA's alleged contemptuous actions in selling pineapples. Although INPROTSA has propounded discovery requests to Del Monte for the specific purpose of demonstrating that Del Monte has not sustained any actual

damages, Del Monte has stonewalled INPROTSA's discovery efforts, based on its unfounded position that such discovery is "irrelevant" because the Court has already determined that contempt should be granted and sanctions imposed. In short, Del Monte has: (1) produced no evidence of its actual damages; (2) objected to every request seeking such information; and (3) only permitted the deposition of its expert witness, Patrick Gannon.

The reason for Del Monte's obstructionist behavior is clear: there is simply no evidence that Del Monte sustained *any* actual damages as a result of INPROTSA selling pineapples. If there were any such evidence, common sense dictates that Del Monte would willingly produce it, as it must for the Court to award a compensatory civil contempt sanction. Indeed, without evidence of actual damages, Del Monte is not entitled to a civil compensatory contempt sanction as a matter of law.

The Court has ordered INPROTSA to show cause why it should not be held in contempt, and INPROTSA has sought discovery from Del Monte to demonstrate such an extreme remedy is not warranted because Del Monte did not sustain any actual damages. Del Monte's objections to INPROTSA's discovery requests should be overruled, and Del Monte should be compelled to provide evidence of its actual damages, admit that it suffered no actual damages, or in the alternative, its Motion for Contempt should be dismissed.

**FACTUAL BACKGROUND**

The facts of this case, by now, are well known to the Court. As such, INPROTSA will focus only on the facts relevant to the present motion.

On March 26, 2018, Del Monte filed its Motion for Contempt, in which it specifically demanded, among other outrageous forms of relief including the incarceration of INPROTSA's officers, that INPROTSA "pay a compensatory fine to Del Monte to compensate it for its losses

resulting from the contemptuous conduct detailed herein." Mot. for Contempt, p. 18. In the Motion for Contempt, Del Monte relied heavily on the Declaration of Patrick Gannon [ECF No. 124] (the "Gannon Declaration") as "evidence" of INPROTSA's alleged contemptuous actions, but nowhere in the Motion for Contempt – or in any subsequent filing – did Del Monte attempt to quantify its actual damages.

After a hearing before this Court, Magistrate Judge Louis issued a Report and Recommendation [ECF No. 191] (the "R&R"), in which she determined that "Del Monte was damaged by loss of the benefit of its bargain with INPROTSA," R&R, p. 20, and recommended that "the Court should order Inprotsa, and its officers, Jorge Luis Gurria Hernandez and Manuel Gurria Ordonez, to show cause why the Court should not hold them in contempt . . . and order sanctions." *Id.* at 26.

On March 15, 2019, the Court entered an Order Adopting Magistrate Judge's Report and Recommendation [ECF No. 200] (the "March 15, 2019 Order"). The Court created no express timeline and provided no specific direction for INPROTSA to show cause why it should not be held in contempt. In fact, with respect to the Motion for Contempt, the Court's March 15, 2019 Order stated only the following: "ADJUDGED that Respondent's Motion for an Order to Show Cause as to why Petitioner should not be held in contempt is GRANTED in part as to Petitioner and DENIED as to third-party Fruver." March 15, 2019 Order, p. 2.

Shortly thereafter, Del Monte filed a Motion for Entry of Final Judgment of Contempt [ECF No. 201] (the "Motion for Final Judgment"), arguing that "Del Monte is entitled to the entry of a final judgment holding INPROTSA and the Gurrias in contempt," based on INPROTSA's purported failure to show cause despite its "abundant opportunity to do so." Motion for Final Judgment, pp. 1, 4. In response to that motion, INPROTSA requested a

3

reasonable opportunity to take discovery relating to why it should not be held in contempt, consistent with its right to due process. INPROTSA specifically stated:

> INPROTSA intends to depose the Costa Rican representatives who presented declarations in support of Del Monte's Contempt Motion. INPROTSA also intends to provide a damages analysis based on Del Monte's lost profits. INPROTSA is entitled to rebut Del Monte's improper gross revenues damages analysis, which is based on a misplaced disgorgement theory. In order to conduct this lost profits analysis, INPROTSA will require Del Monte's business and financial records that will permit INPROTSA to determine Del Monte's lost profits, if any, that were directly caused by the conduct at issue. Further, if there are no lost profits, there can be no sanctions or sanctions remedy, given that there is no ongoing conduct that can be construed to violate any arbitral award or court order.

INPROTSA's Resp. to Mot. for Final Judgment [ECF No. 205], p. 5.

The Court denied Del Monte's Motion for Final Judgment in its May 20, 2019 Order Denying Motion for Entry of Final Judgment of Contempt [ECF No. 207] (the "May 20, 2019 Order"), stating only that "the motion for entry of final judgment is DENIED as premature." May 20, 2019 Order, p. 1. Still no deadlines or timelines were set forth for INPROTSA to show cause why it should not be held in contempt, but the Court granted INPROTSA's request for discovery without limitation, stating: "The Court will then allow the parties to conduct discovery until August 15, 2019." *Id.* at 2.

Since the Court ordered INPROTSA to show cause, INPROTSA has propounded discovery requests to Del Monte in order to obtain documents and information that will aid its efforts to show cause why it should not be held in contempt. Specifically, INPROTSA propounded the following discovery requests: (1) Request for Production of Documents; (2) Notice of Rule 30(b)(6) Deposition; (3) Notice of Taking Deposition of Rodrigo Jimenez;[1] (4)

---

[1] Mr. Jimenez provided a declaration in support of Del Monte's Contempt Motion. *See* ECF No. 137, Ex. A.

4

Notice of Taking Deposition of Del Monte's Expert, Patrick Gannon;[2] (5) First Request for Admissions to Del Monte; and (6) First Set of Interrogatories to Del Monte. Del Monte objected to all discovery requests and permitted only the deposition of Mr. Gannon, the sole expert witness that it relied upon in its Contempt Motion.

In its prior Motion to Compel Discovery [ECF No. 212] (the "Motion to Compel"), INPROTSA moved this Court for the entry of an Order compelling the deposition of Del Monte's corporate representative, the deposition of Mr. Jimenez (or in the alternative, striking his declaration), and the production of documents identified in INPROTSA's Request for Production of Documents. Del Monte opposed the Motion to Compel, which is now fully briefed and remains pending before this Court.

Since the filing of INPROTSA's Motion to Compel, Del Monte also has now objected to INPROTSA's First Set of Interrogatories and its First Request for Admissions. *See* Del Monte's Objs. to Pet'r's First Set of Interrogs., attached as Ex. A; Del Monte's Objs. to Pet'r's First Req. for Admiss., attached as Ex. B. Del Monte objects to INPROTSA's efforts to obtain discovery that would allow INPROTSA to show cause why it should not be held in contempt.[3] In the only deposition that Del Monte has permitted, its expert witness, Patrick Gannon, confirmed that he analyzed only INPROTSA's sales and gross revenues, rather than opining on any actual damages

---

[2] Mr. Gannon provided two Declarations in support of Del Monte's Contempt Motion. *See* ECF Nos. 136, 179.

[3] Del Monte's efforts to stonewall INPROTSA's discovery requests are even more reprehensible after considering that INPROTSA has fully complied with its discovery obligations over the course of this proceeding. In fact, INPROTSA has answered over 50 interrogatories and produced over 30,000 documents pursuant to the more than 100 requests for production of documents propounded by Del Monte. INPROTSA's corporate representative, Jorge Luis Gurria Hernandez, has been deposed by Del Monte's lawyers on two separate occasions, for a total of four days. Del Monte should not be the only party entitled to discovery.

or harm suffered by Del Monte. *See generally* Tr. of July 19, 2019 Dep. of P. Gannon, attached as Ex. C.

INPROTSA now moves this Court for an order compelling Del Monte to produce evidence of the actual damages it purportedly sustained as a result of INPROTSA's allegedly contemptuous actions or to dismiss its Motion for Contempt.

## ARGUMENT

In short, Del Monte should be compelled to produce evidence of its actual damages. And if no evidence of actual damages exists, this Court should dismiss the Motion for Contempt because, in the absence of any actual damages, Del Monte is not entitled to a compensatory civil contempt sanction as a matter of law.

**I.  Del Monte Must Produce Evidence of Actual Damages
to Be Awarded a Compensatory Civil Contempt Sanction**

**A.  Civil Contempt Sanctions Must Be Based on Evidence of Actual Damages**

Civil contempt may only be employed "for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947). Here, there is nothing to coerce.[4] The unrebutted record evidence shows that INPROTSA is in full compliance with the injunctive relief set forth in the award, despite the fact that the award still has not been confirmed in Costa Rica. *See* Decls. of J. Gurria, ECF No. 209, Ex. A; ECF No. 177, Ex. A; ECF No. 151, Ex. A; ECF No. 141, Ex. A. As such, the only other purpose for a court to issue a monetary sanction for civil contempt would be to compensate for actual damages.

---

[4] It also is clear that Del Monte is not seeking to recover a coercive sanction from INPROTSA, given that a coercive sanction "is paid into the court registry, not to the complainant." *In re Chase & Sanborn Corp.*, 872 F.2d 397, 401 (11th Cir. 1989).

A compensatory civil contempt sanction "must be based on proof of the complainant's actual loss." *In re Chase & Sanborn Corp.*, 872 F.2d 397, 401 (11th Cir. 1989); *Parisi v. Broward Cty.*, 769 So. 2d 359, 366 (Fla. 2000); *see also United Mine Workers of Am.*, 330 U.S. at 304 ("Such fine must of course be based upon evidence of complainant's actual loss."); *McGregor v. Chierico*, 206 F.3d 1378, 1386-87 (11th Cir. 2000) ("An award of damages in a civil contempt proceeding requires proof of both the fact of injury to the aggrieved party and the amount of damages the aggrieved party has suffered."); *S. Dade Farms, Inc. v. Peters*, 88 So. 2d 891, 899 (Fla. 1956) ("[T]he history of civil contempt proceedings sustains the conclusion that the power to impose a compensatory fine to the extent of the damages suffered by the injured party . . . .").

For example, in *In re Chase & Sanborn*, the Eleventh Circuit vacated a compensatory civil contempt sanction, determining that the party seeking the contempt sanction "offered no evidence to show any actual loss resulting from defendants' contumacy." *In re Chase & Sanborn Corp.*, 872 F.2d at 400. The court held that the party moving for such a sanction "had the burden of proof to provide the court with the basic evidentiary facts to formulate a realistic sanction." *Id.* Given that there was "no evidence of actual loss resulting from the defendants' contumacy," the Eleventh Circuit vacated the lower court's compensatory civil contempt sanction. *Id.*

Likewise, in *Parisi v. Broward County*, the Florida Supreme Court held that the contempt sanction at issue was not a "valid compensatory sanction because the County did not submit any evidence to establish that the amount of the sanction was related to damages suffered as a result of the contemptuous conduct." 768 So. 2d 359, 366 (Fla. 2000). And in *Nical of Palm Beach, Inc. v. Lewis*, the court held that a "loss in general" is "too speculative" to support a

7

compensatory civil contempt sanction without "proof by competent evidence of an actual loss." 815 So. 2d 647, 650 (Fla. 4th DCA 2002).

Here, Del Monte has the burden of proof to provide evidence of its actual damages. Although Del Monte previously has argued that the Court determined that Del Monte has been damaged, *see, e.g.*, Del Monte's Resp. in Opp. to Mot. to Compel Discovery [ECF No. 213], p. 2, the Magistrate Judge's finding that "Del Monte was damaged by loss of the benefit of its bargain with Inprotsa," R&R, p. 20, is precisely the type of "loss in general" that is insufficient to support a compensatory civil contempt sanction. Del Monte must provide evidence that it was actually damaged.

### B. Del Monte Refuses to Provide Any Evidence of Actual Damages

Through its misrepresentation and manipulation of the R&R, Del Monte continues to assert that INPROTSA's discovery requests relating to Del Monte's actual damages are irrelevant based on its unfounded position that the Court has already awarded Del Monte a compensatory civil contempt sanction, not based on Del Monte's actual damages, but in the form of disgorgement.[5]  *See* Objs. to Pet'r's First Set of Interrogs. (Ex. A); Objs. to Pet'r's First Req. for Admiss. (Ex. B); *see also* Del Monte's Resp. in Opp. to Mot. to Compel Discovery [ECF No. 213], p. 2. In its Objections to INPROTSA's First Set of Interrogatories, for example, Del Monte makes the same cut-and-paste objection to Interrogatory Nos. 5-11: "Del Monte construes this interrogatory as a request for information referring or relating to the compensatory fine that Del Monte has requested and that the Court has imposed against INPROTSA arising

---

[5] Florida law is clear that the only appropriate measure of damages would be Del Monte's lost profits, not INPROTSA's gross revenues. *HCA Health Servs. of Fla., Inc. v. Cyberknife Ctr. of Treasure Coast, LLC*, 204 So. 3d 469, 472 (Fla. 4th DCA 2016) ("Florida law requires proof of lost profits (income less expense) rather than merely gross revenue.").

8

from the Court's finding that INPROTSA is in contempt." Objs. to Pet'r's First Set of Interrogs. (Ex. A), pp. 5-14.  Del Monte's objection continues:  "Pursuant to Del Monte's request in its Motion for Contempt to assess a compensatory fine against INPROTSA, the Court has ordered INPROTSA to disgorge all sales revenue INPROTSA 'improperly received as a result of its sales made after the entry of this Court's Final Judgment.'"  *Id*.

In reality, the Court has neither found INPROTSA to be in contempt nor imposed any compensatory fine against INPROTSA, let alone the extreme and improper remedy of disgorgement.[6]  Instead, the Magistrate Judge recommended that the Court give INPROTSA an opportunity to show why it *should not* be held in contempt and why it *should not* be ordered to pay the sales proceeds it received as a compensatory civil contempt sanction.  The R&R states:

> The Court should order Inprotsa, and its officers, Jorge Luis Gurria Hernandez and Manual Gurria Ordonez, to show cause why the Court should not hold them in contempt for failing to comply with the Court's Final Judgment by making sales of MD-2 pineapples in violation of the permanent injunction of the Award, and order sanctions, including monies Inprotsa improperly received as a result of its sales made after entry of this Court's Final Judgment.

R&R, p. 26.

Contrary to Del Monte's distortion, the Court has not ordered a disgorgement remedy. The Court has afforded INPROTSA the opportunity to show cause why it should not be ordered to pay the sales proceeds it received from the sales of pineapples as a compensatory civil contempt sanction.  INPROTSA has been trying to do just that.  Del Monte's objections as to relevancy should be overruled, and it must be compelled to produce evidence of its actual damages if it has, in fact, sustained any such damages.

---

[6] Further, Del Monte's position is belied by its Motion for Final Judgment, in which it sought "the entry of a final judgment holding Petitioner . . . in contempt," but which this Court denied.  *See* Mot. for Final Judgment [ECF No. 201].

## II. Del Monte's Contempt Motion Should Be Dismissed if Del Monte Cannot Produce Evidence of Any Actual Damages

To date, Del Monte has failed to provide any evidence that it has suffered any actual damages, which, as explained above, it must do to be awarded a civil compensatory contempt sanction. From the limited discovery that Del Monte has allowed – the deposition of its expert witness, Patrick Gannon – it is clear that Del Monte *cannot* produce any such evidence. The Gannon Declaration was the focus of Del Monte's Contempt Motion and the primary basis supporting its alleged entitlement to a compensatory civil contempt sanction. As evidenced from his testimony, Mr. Gannon – and hence, Del Monte – made no effort to quantify any actual damages Del Monte purportedly sustained as a result of INPROTSA's alleged contemptuous actions. *See* Tr. of July 19, 2019 Dep. of P. Gannon, attached as Ex. C.

In his deposition, Mr. Gannon testified that he was retained by Del Monte only to determine "whether or not INPROTSA was selling more than 7 percent of its likely harvest." *Id.* at 12:23-25. In the preparation of his declaration, Mr. Gannon only reviewed and analyzed "information relating to sales by INPROTSA," which included INPROTSA's "sales in dollar and sales in quantities." *Id.* at 15:5-8; 15:22-25. In addition, Mr. Gannon testified that he never considered INPROTSA's profits. In fact, Mr. Gannon stated: "I've never seen any information as to INPROTSA's costs or profits." *Id.* at 30:3-4. And Mr. Gannon further specified that he had "never seen any information from INPROTSA relative to any of its expenses." *Id.* at 38:25; 39:1-2; 44:1-9. In short, Mr. Gannon's declaration is based exclusively on INPROTSA's gross revenues from its pineapples sales.

By his testimony, Mr. Gannon confirmed that he never calculated, estimated, or otherwise considered any actual damages Del Monte sustained. Not only did Mr. Gannon not

10

consider Del Monte's margins for the sale of pineapples during the time in which INPROTSA was allegedly engaged in its contemptuous pineapple sales, he never even considered the market price of pineapples during that timeframe. *Id.* at 30:22-25, 31:4-5; 42:8-13. In fact, Mr. Gannon stated that he "did not do a market-price analysis of any kind." *Id.* at 28:10-11. And in response to the question of whether he attempted to determine if there was any price variation in the cost of pineapples due to INPROTSA's sales, Mr. Gannon stated that such an analysis would be "well beyond the scope of my declaration or the assignment. It's far outside, just as I didn't attempt to calculate prices of bananas for Chiquita." *Id.* at 47:5-10.

In addition, Mr. Gannon never attempted to estimate what additional profits Del Monte might have made if INPROTSA had sold its pineapples to Del Monte. *Id.* at 45:11-17. He never analyzed Del Monte's sales figures, *id.* at 46:22-25; 47:1-3, and he testified that he was not aware if Del Monte was ever unable to fill any orders from its customers because of INPROTSA's pineapples sales. *Id.* at 45:19-25; 46:1-2. Mr. Gannon stated that "if you read [his] declaration," it is "very clear" that he never attempted to determine any actual losses Del Monte may have suffered due to INPROTSA's sales activity. *Id.* at 47:15-21. And when specifically asked to confirm that there is nothing in his declaration about economic harm that Del Monte suffered, Mr. Gannon responded: "I agree. And I believe the declaration is written in pretty clear, plain English, and there is no ambiguity as to that concept." *Id.* at 48:1-10.

Accordingly, from the limited discovery that INPROTSA has been able to obtain, it is clear that Del Monte cannot provide any evidence of actual damages. Simply put, this is because it has not suffered any actual damages. And if further discovery confirms that no such evidence exists, this Court should dismiss Del Monte's Motion for Contempt because, as a matter of law,

Del Monte is not entitled to a compensatory civil contempt sanction in the absence of evidence of actual damages.

## CONCLUSION

Despite INPROTSA's good-faith efforts to obtain discovery that would allow INPROTSA to show cause why it should not be held in contempt, Del Monte has refused to comply and has stonewalled INPROTSA at every turn. The reason for this is clear: Del Monte has not suffered any actual damages. In the event that Del Monte did suffer actual damages, it must be compelled to produce evidence supporting such damage. And if no evidence of its actual damages exists, this Court should dismiss the Motion for Contempt because Del Monte would not be entitled to a compensatory civil contempt sanction as a matter of law.

WHEREFORE, INPROTSA respectfully requests that this Honorable Court compel Del Monte to respond to INPROTSA's discovery requests that seek to quantify any actual damages suffered by Del Monte or, failing that, dismiss Del Monte's Motion for Contempt.

Date:  September 16, 2019　　　　　　　　　　Respectfully submitted,

**HOGAN LOVELLS US LLP**
600 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 459-6500
Facsimile: (305) 459-6550

By: */s/ Alvin F. Lindsay*
Richard C. Lorenzo
Florida Bar Number: 71412
richard.lorenzo@hoganlovells.com
Alvin F. Lindsay
Florida Bar Number: 939056
alvin.lindsay@hoganlovells.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed this 16th day of September, 2019, using the Court's CM/ECF system, which will automatically send notice and a copy of same to all counsel of record.

By: */s/ Alvin F. Lindsay*
Alvin F. Lindsay