UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-24275-CV-MORENO/LOUIS

INVERSIONES Y PROCESADORA
TROPICAL INPROTSA, S.A.,

      Petitioner,

vs.

DEL MONTE INTERNATIONAL GMBH,

      Respondent.
_____/

**REPORT AND RECOMMENDATION**

**THIS CAUSE** came before the Court upon Respondent's Renewed Motion for Judgment of Contempt (ECF No. 229). These matters are fully briefed and were referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable Federico A. Moreno, United States District Judge (ECF No. 232). An evidentiary hearing was conducted before the undersigned beginning on June 2, 2020 and continuing on June 30, 2020. Having carefully considered the motions, the record as a whole, and being otherwise fully advised in the premises, the undersigned issues the following recommendations.

**I.    BACKGROUND**

The facts of these proceedings span the course of four years and are otherwise known to the parties. As relevant here, Inversiones Y Procesadora Tropical Inprotsa, S.A. ("Inprotsa") is a commercial pineapple grower in Costa Rica. Del Monte International GMBH ("Del Monte") is an international pineapple seller. The parties had a dispute regarding certain pineapple seeds that,

1

pursuant to their agreement, they submitted to arbitration in Miami, Florida. The Arbitral Panel found in favor of Del Monte and issued an Arbitral Award ("Award"). In addition to a monetary award, the arbitration Award included two injunctions: the first was to immediately destroy and or return all MD-2 seeds in excess of 7% of its vegetative material ("Destruction Injunction"), the second required Inprotsa, if it elected not to return or destroy the seeds, to only sell those pineapples derived from those seeds to Del Monte ("Sales Injunction").

Del Monte moved to confirm the award in Costa Rica; Inprotsa moved to vacate the award in state court in Miami-Dade Florida, the seat of the arbitration. Del Monte removed the action to this Court and cross moved to confirm the petition. The Honorable Federico A. Moreno confirmed the award and entered judgment on May 17, 2017.

Inprotsa did not immediately destroy or return the seeds and continued cultivating and harvesting pineapples as enjoined. Once the pineapples were grown, it elected to sell them to a third party until at least April of 2018. Del Monte discovered the sales and moved for an Order to Show Cause why Inprotsa should not be held in contempt for violating the Court's Final Judgment which subsumed the Arbitral Award.

i. **Procedural History**

Del Monte first moved for Entry of an Order to Show Cause Why Inprotsa Should Not Be In Contempt in March 2018. Del Monte contended that Inprotsa violated this Court's order by continuing to sell MD-2 pineapples against the injunction contained in the Award that this Court had confirmed under the New York Convention (ECF No. 123). Inprotsa responded in opposition and Del Monte replied (ECF Nos. 129, 130). Judge Moreno referred the Motion to the undersigned (ECF No. 131). The undersigned then held an evidentiary hearing on the Motion for Contempt (ECF No. 181). After that hearing, the undersigned issued a Report and Recommendation to Judge

Moreno (ECF No. 191). As it pertains to contempt, the Report and Recommendation memorialized twelve paragraphs of certified facts. The Report recounted that the arbitration panel ordered Inprotsa to return or destroy 93% of the MD-2 vegetative materials; that Inprotsa was permanently enjoined from selling MD-2 pineapples, with the exception of sales in amounts not exceeding 7% of each MD-2 harvest, unless those sales were to Del Monte; and that Inprotsa was ordered pay Del Monte damages in the amount of $26,133,000.00, arbitral costs of $650,000.00, and legal representation costs and fees of $2,507,440.54, for a total amount of $29,290,440.54, plus pre-award and post-award interest. The award gave Inprotsa the option to sell to Del Monte all pineapples harvested from Del Monte Plant Stock on Inprotsa's plantation in lieu of immediate destruction of the MD-2 vegetation material.

The undersigned found that the award applied to 1,150 hectares of Inprotsa's farmland in Costa Rica. The undersigned further found that Inprotsa did not elect to sell the MD-2 vegetative materials to Del Monte, nor did it destroy the MD-2 vegetative material immediately, but rather at the same pace that occurs at the pineapple's normal growth and harvesting cycle. I further found that Inprotsa continued to make sales of pineapples to someone other than Del Monte. Specifically, I found that Inprotsa executed contracts with third-party Fruver, which is owned by a close family friend of Inprotsa's officers. Finally, I found that according to Inprotsa's sales figures, between May 2, 2017 and September 30, 2018, Inprotsa's sales revenue was $16,373,684, which exceeded the 7% cap in violation of the injunction against sales.

The Report recommended that Judge Moreno grant Del Monte's Motion for an Order To Show Cause, in part (ECF No. 191 at 26). Specifically, I recommended that Judge Moreno order Inprotsa, and its officers, Jorge Luis Gurria Hernandez and Manuel Gurria Ordonez, to show cause why the Court should not hold them in contempt for failing to comply with the Court's Final

Judgment by making sales of MD-2 pineapples in violation of the permanent injunction of the Award as subsumed by this Court's Final Judgment, and that Judge Moreno should order sanctions, including monies Inprotsa improperly received as a result of its sales made after entry of this Court's Final Judgment (*id*.). Judge Moreno adopted the Report and Recommendations (ECF No. 200). However, before the Order to Show Cause was issued on the issue of contempt, Del Monte moved for Entry of Final Judgment of Contempt and Ordering Assignment of Contract Rights (ECF No. 201). Judge Moreno denied that Motion as premature (ECF No. 207).

Del Monte filed the present Renewed Motion for Entry of Final Judgment of Contempt, seeking entry of judgment in excess of $16,000,000.00 plus attorney's fees (ECF No. 229). Judge Moreno referred that Motion to the undersigned for a report and recommendation (ECF No. 232).

At a hearing on another motion in this case on March 12, 2020 (ECF No. 246), a status conference was conducted on Judge Moreno's referral of Del Monte's Renewed Motion for Entry of Final Judgment of Contempt. The undersigned asked Inprotsa what steps it viewed as necessary in order to afford it due process as it related to the issue of contempt. *See* Transcript, March 12, 2020 hearing (ECF No. 249 at 65-67). Inprotsa requested an opportunity for a hearing and an additional memorandum. The Court granted both requests. That briefing was filed on April 24, 2020 (ECF No. 261) and the hearing was conducted over two days on June 2, 2020 and June 30, 2020 (ECF Nos. 270, 280).

## II.   INPROTSA'S SUPPLEMENTAL MEMORANDUM

Inprotsa's supplemental memorandum raises three main defenses to an issuance of final judgment of contempt: one procedural defense, a legal defense, and a factual defense. The undersigned addresses each in turn below.

### a. Procedural Defense

Inprotsa avers that the undersigned lacks the authority to conduct any further proceedings on the issue of contempt because I have already certified facts to the district court judge, and thus, the only remaining procedural hurdle is for the district court judge to issue a show cause order and hold an evidentiary hearing. Inprotsa avers that the ongoing proceedings exceed the magistrate judge's limited contempt powers pursuant to 28 U.S.C. § 636(e). Inprotsa also argues that in light of the complex, intersecting issues, I should not recommend that Inprotsa make any further appearance before Judge Moreno on the issue of contempt because the issues are complicated and nuanced.

While it is true that only a district judge is authorized to adjudicate contempt, the motion at issue is a Renewed Motion for Judgment of Contempt and has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(3), also known as the "additional duties" provision of 28 U.S.C. § 636(b)(3). This provision authorizes a district court to refer to a magistrate judge "such additional duties as are not inconsistent with the Constitution and laws of the United States." *Id*. Other courts have held that post judgment motions may be referred to a magistrate judge through this provision, so long as the district judge retains the ultimate responsibility for decision making. *See Arrowood Indem. Co. v. Trustmark Ins. Co.*, 3:03CV1000 JBA TPS, 2012 WL 1596980, at *3 (D. Conn. May 7, 2012) (citing *Colo. Bldg. & Constr. Trades Council v. B.B. Andersen Constr. Co.*, 879 F.2d 809, 811 (10th Cir.1989)).

The motion referred to the undersigned is Del Monte's renewed motion for entry of judgment in its favor. If Judge Moreno determines, on the facts certified, to hold Inprotsa in contempt and order sanctions paid to Del Monte, the previously issued Report and Recommendation makes no finding or recommendation as to the amount that may be awarded.

Inprotsa's argument that Del Monte has brought the Motion prematurely, before an order to show cause has yet issued, is well placed; notwithstanding, these evidentiary proceedings attendant to determining the amount of sanctions, if any, are not beyond the undersigned's authority and within the scope of referral by Judge Moreno, who will ultimately determine whether Inprotsa should be found in contempt of court.

### b. Legal Defense

Inprotsa also avers in its Memorandum that the undersigned should not recommend Judge Moreno find it in contempt because the Final Judgment of this Court has not been shown by clear and convincing evidence to be valid and lawful, or clear and unambiguous.

Every civil contempt proceeding is brought to enforce a court order that requires the defendant to act or refrain from acting in some defined manner. *Mercer v. Mitchell*, 908 F.2d 763, 768 (11th Cir. 1990). A party petitioning for a civil contempt finding must prove by clear and convincing evidence that the respondent violated a court order. *United States v. Hayes,* 722 F.2d 723, 725 (11th Cir. 2019). Once a prima facie showing of violation has been made, the respondent can defend its failure on the grounds that it was unable to comply. *Id*.

An inability to comply can be shown through one of three ways: 1) the allegedly violated order was invalid or unlawful; 2) the order was unclear or ambiguous; and 3) the alleged violator did not have the ability to comply with the order. *Georgia Power Co. v. N.L.R.B.*, 484 F.3d 1288, 1291 (11th Cir. 2007). The prior Report and Recommendation (ECF No. 191) only found that Inprotsa had willfully violated the Injunctions as required by this Court's Judgment. It did not, however find that the order was valid and lawful, the order was clear and unambiguous, or that the alleged violator had the ability to comply with the order. The first two of those challenges are legal defenses. However, at this posture, such arguments are unavailing.

Inprotsa avers that the order was not clear and unambiguous because there was legal ambiguity as to whether the injunction was enforceable. In support of this proposition it cites to *Harrison Baking Co. v. Bakery and Confectionary Workers, Local No. 3, AFL-CIO*, 777 F. Supp. 306, 307 (S.D. N.Y. 1991).[1] There, a court ordered an employer to reinstate an employee through a mandatory injunction. An appeal arose, and the parties disputed whether the appeal stayed the mandatory injunction. The employer moved pursuant to Rule 62 for a stay of the order pending appeal and the defendant moved simultaneously for contempt. The court agreed that the impact of the order was not clear and unambiguous and accordingly declined to hold the plaintiff in contempt for the 10 days it did not follow the order because, once the plaintiff was faced with the Order to Show Cause, plaintiff told defendant that it would pay under a proposal raised by defendant. The court ultimately concluded that while it was not full compliance, it was not "clear and convincing evidence of noncompliance." *Id*. at 311. Notably, while it did not hold plaintiff in contempt, it awarded attorney's fees incurred in efforts to secure plaintiff's compliance with the order. *Id*.

Inprotsa's noncompliance here was neither brief nor attributable to an ambiguity in the effect of a stay. Nor can the undersigned agree that the Award and ensuing injunction was not clear. The Judgment and its accompanying injunctions have been affirmed by the Court of Appeals for the Eleventh Circuit. *See Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l, GMBH*, 921 F.3d 1291 (11th Cir. 2019). The Court notes that Inprotsa never raised the issue of the injunction being unclear or ambiguous to the court of appeals, despite the fact that it raised another public policy defense relating to fraud, rather it first raised this defense after the Motion for Contempt was filed and after it had ceased farming of the pineapple seeds at issue. Therefore,

---

[1] Inprotsa also cites to a hearing transcript from a District of Connecticut hearing transcript where a magistrate judge orally denied considering a finding of contempt. However, it cites to no report and recommendation or other order from that case to support its proposition.

7

the Judgment was valid and lawful as well as clear and unambiguous. As such, the undersigned does not recommend that Inprotsa prevail on this defense to contempt.

### c. Factual Defense

Inprotsa also avers that it lacked the ability to comply with the destruction injunction because such large destruction of agriculture would be against Costa Rican law. Inprotsa had advanced this factual defense previously on the same and similar evidence in response to Del Monte's motion for an order to show cause and my recommendation is unchanged.

Recall that the Award required Inprotsa to cease sales of pineapples derived from the contested seeds by destroying the plants immediately or selling to Del Monte that which it did not immediately destroy. Based on the evidence presented, it was not contested that Inprotsa did not comply by destroying the vegetation. "Inprotsa did not destroy the MD-2 vegetative material immediately, but rather at the same pace that occurs at the pineapple's normal growth and harvesting cycle." (ECF No. 191 at 24 ¶ 7) (internal alterations omitted). Inprotsa advanced Costa Rican law as a defense to its immediate destruction; notwithstanding, I was persuaded by the testimony of Inprotsa's president, Jorge Luis Gurría Hernández, who explained that Inprotsa needed to make the sales notwithstanding the injunction and justified doing so because the confirmation proceedings were then stayed in courts in Costa Rica and pending on appeal here.

Moreover, inability to destroy the plants is not a defense to Inprotsa's failure to abide by the related sales injunction—that it sell the resulting pineapples to no one other than Del Monte. It is uncontested that Inprotsa did not sell the pineapples to Del Monte.

While Inprotsa introduced seventeen new exhibits into evidence during the hearings held on June 2 and 30, 2020, nothing it advanced demonstrated anything that was not already elsewhere in the record. For instance, Inprotsa advanced the Declaration of Jorge Luis Gurria Hernández,

which was already relied on by the undersigned in the previous Report and Recommendation. Inprotsa also advances a report of an environmental engineer certifying that the necessary destruction had occurred by April of 2018, however this has already been established.

Simply because there was a pending appeal to the Eleventh Circuit and a stay in Costa Rica is unavailing. The focus in a civil contempt proceeding is not the "subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." *Georgia Power*, 484 F.3d at 1291 (citing *Howard Johnson Co., Inc., v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990). Thus, to succeed on the defense, the respondent must go beyond a mere assertion of inability and satisfy its burden of production on the point by introducing evidence in support of its claim. *Hayes*, 722 F.2d at 725. The contemnor must establish that he has made "in good faith all reasonable efforts" to meet the terms of the court order he is seeking to avoid. *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988). In this Circuit, that requirement is construed strictly. Even if the efforts made were substantial, diligent, or in good faith, that fact that the contemnor did not make all reasonable efforts establishes that the alleged contemnor did not sufficiently rebut the prima facie showing of contempt. *Combs v. Ryan's Coal Co., Inc.*, 785 F.2d 970, 984 (11th Cir. 1986). Inprotsa has advanced no evidence that it acted diligently in attempting to destroy the pineapples or sell them to Del Monte, in fact the opposite has been shown: Inprotsa knew of the injunctions, knew that it had been ordered to destroy the pineapples or sell them only to Del Monte, and chose instead to farm them as it normally would and sell them to third-party Fruver in hopes that it would win at the appellate level.

In these hearings, Inprotsa has advanced or adduced no new evidence which would demonstrate that it could not comply with this Court's Final Judgment. Instead, the previously certified facts showed that Inprotsa had the ability and means to comply with the Final Judgment

9

but rather elected not to comply for reasons advanced by the President of the Company. Nothing which has been presented compels a finding or recommendation that Inprotsa should not be ordered to show cause for violating the Court's Final Judgment; for the same reasons, for purposes of the present Motion, the evidence of Inprotsa's defenses to compliance do not warrant a recommendation that if found in contempt, an award should not be entered against Inprotsa for its inability to comply.

### III.    DEL MONTE'S REQUEST FOR DISGORGEMENT REMEDY

Del Monte avers that an award of disgorgement of Inprotsa's profits would be a proper remedy in these contempt proceedings.[2] The civil contempt power may be used for one of two reasons: "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses suffered." *United States v. United Mine Workers*, 330 U.S. 258, 303-04 (1947). There is no argument here that the Petitioner needs to be coerced into complying with the Court's Judgment at this posture as both parties admit that the vegetative material has since been destroyed. However, if the Court determines a compensatory fine is necessary, it is payable to the complainant and must be based on proof of the complainant's actual loss. *In re Chase & Sanborn*, 872 F.2d 397, 401 (11th Cir. 1989).

Since these proceedings are tied to past conduct, they cannot be coercive. *Gregory v. Depte*, 896 F.2d 31, 34 (3d Cir. 1990). Therefore, any remedy this Court fashions may not exceed the actual damages caused to Del Monte. *Id*. Although contempt is an equitable remedy, "there can be no equity in a compensatory award except as it provides a fair equivalent for some loss." *Id*. (citing *National Drying Machinery Co. v. Ackoff*, 245 F.2d 192, 195 (3rd Cir.), *cert. denied*, 355 U.S. 832

---

[2] The Motion remains premature in that it seeks entry of judgment before the Court has ordered Inprotsa to show cause or otherwise has held it in contempt; nonetheless, the undersigned has considered the evidence and arguments advanced in support of what sanctions the Court may award if a finding of contempt is made by Judge Moreno.

(1957). The complainant bears the burden of producing evidence sufficient to show his damages based on the contempt. *See United Mine Workers*, 330 U.S. at 304; *see also In re Chase & Sandborn Corp.*, 872 F.2d at 401.

Del Monte avers that the correct remedy should be disgorgement of Inprotsa's gross revenues obtained from the sale of the contested pineapples. Del Monte rejects any argument that Inprotsa should be disgorged of its profits, not gross revenue; Del Monte contends that allowing a setoff for Inprotsa's costs of production (or any other costs) is tantamount to allowing Inprotsa to violate the Court's Judgment so long as Inprotsa does not generate a profit from its contemptuous conduct.[3]

Inprotsa disputes the measure of damages tied to disgorgement and advances case law standing for the proposition that under analogous circumstances, the party injured by contemptuous conduct bears the burden of showing its damages and because Del Monte has advanced no evidence to show what damages it suffered, Inprotsa cannot be fined for any violations of the Court's Final Judgment. Inprotsa also avers that if the Court does find that disgorgement is a proper remedy, the Court should only award disgorgement of its gross profits, not its gross revenues.

The purpose of a civil fine is not to punish the wrong-doer, it is to compensate the injured. *F. T. C. v. Leshin*, 618 F.3d 1221, 1239 (11th Cir. 2010). Del Monte's own argument shows that it seeks an award to punish: Del Monte contends that disgorgement is proper not because of the harm it suffered but because allowing Inprotsa to keep any monies it received would allow Inprotsa to benefit from violating the injunction. *See* Resp. Final Brief (ECF No. 262 at 17).

Del Monte cites to *Leshin* for the proposition that disgorgement of profits rather than

---

[3] Inprotsa contends that it operated at a loss during the time between entry of the judgment on the award and completion of destruction of the pineapples.

11

revenues (and implicitly that awarding those disgorged profits to Del Monte) is the proper remedy. However, *Leshin* is not factually analogous to the case at hand. In *Leshin* the contempt defendants were in violation of a court's injunction regarding their services for debt consolidation or engaging in deceptive or abusive telemarketing practices; charging fees, or executing contracts with fees, among other things. The court found that the contempt defendants had illicitly taken compensation from consumers and thus ordered that the funds they received from the consumers be disgorged to compensate the consumers based on the consumers actual losses. The disgorgement thus directly compensated those who had paid defendants by giving them back their own monies. In other words, the remedy of disgorgement was to compensate the consumers who had been harmed by the contemnor's violation of the order based directly on their losses. Del Monte does not seek to recoup monies it paid, nor otherwise evidenced its harm by the measure Inprotsa was paid. That is to say, it has not evidenced at the hearing held on June 2, 2020 or otherwise that it suffered a loss of profits, loss of revenues, or otherwise had its business effected.

Likewise, in the other cases to which Del Monte cites, those courts attempted to return funds that had been illicitly captured from the aggrieved party by the contempt defendant. *F.T.C. v. RCA Credit Services, LLC*, 8:08-CV-2062-T-27MAP, 2011 WL 5924969, at *6 (M.D. Fla. Oct. 5, 2011) (requiring the contempt defendant to pay monies to the FTC so that they may reimburse consumers who established their right to compensation); *Clairson Intern. Corp. v. Master Tool Co., Inc.*, 84-2861-CIV, 1986 WL 84374, at *3 (S.D. Fla. Feb. 4, 1986) (holding that its contempt sanction was merely compensatory in nature and ordering payment for the total loss of plaintiff).

Del Monte's position here is not like the victims in those cases. Del Monte never paid Inprotsa monies which must now be disgorged, rather it gave Inprotsa pineapple seeds so that Inprotsa could grow the pineapples and sell them back to Del Monte. In fact, had Inprotsa complied

with the Final Judgment, Del Monte would have paid Inprotsa for the ripe pineapples, once they had been grown: the agreement, as the Arbitral Panel interpreted it, did not require Inprotsa to pay for these seeds, rather the agreement called for Del Monte to give Inprotsa the seeds for free and for Inprotsa to sell them back to Del Monte. Del Monte was never set to recover money in exchange for the pineapples, instead it agreed to buy grown pineapples, presumably at a preferential price although this was never established, from Inprotsa so that Del Monte may sell them itself. Del Monte has failed to show by clear and convincing evidence that its measure of damages is equal to Inprotsa's gross revenues and Del Monte advances no other evidence by which to measure an award of damages. I do not therefore recommend an award entered on Del Monte's behalf in the amount sought, in excess of $16 million.

### a. Attorney's Fees

While I do not recommend disgorgement as an appropriate remedy, as explained above, the purpose of civil contempt is to end the contemptuous behavior at issue. When a movant is forced to seek contempt in order to affect compliance with a lawfully entered order, the movant is entitled to recover its reasonable attorney's fees and expenses cause by the contemnor defendant's contempt. *Belize Telecom Ltd. v. Gov't of Belize*, 2005 WL 7858276, *8 (S.D. Fla. Apr. 13, 2005) ("Plaintiffs are entitled to reasonable attorneys' fees and expenses caused by Defendant's contempt."); *U.S. v. Far East Suppliers, Inc.*, 682 F. Supp. 1215, 1216-17 (S.D. Fla. 1988) ("[t]he award of fees and costs is particularly appropriate where the contemnor willfully disregarded a court's order"). The facts that I certified, and adopted by Judge Moreno, showed that Inprotsa did not stop selling the MD-2 pineapples until April of 2018, after Del Monte had filed its Motion for Contempt but before Inprotsa had responded to that Motion. Therefore, the Motion was sufficient to, and successful in, ending the contemptuous behavior. As such, Del Monte is entitled to its

attorneys' fees in bringing about compliance.

The Eleventh Circuit has found that a fee award does not necessarily have to be proportional to the amount recovered by virtue of a contempt award. *See PlayNation Play Systems, Inc. v. Velex Corporation*, 939 F.3d 1205, 1215 (11th Cir. 2019). As the Court found in *PlayNation Play Systems*, "if a party . . . could not recover its attorneys' fees, it would have a reduced incentive to monitor for violations of court orders, particularly when its provable actual damages are relatively small." *Id*. At the same time, sanctions for civil contempt are not equivalent with typical payment of attorneys' fees, and civil contempt sanctions do not require the use of the lodestar method. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Olympia Holding Corp.*, 140 Fed. Appx. 860, 864 (11th Cir. 2005). Del Monte is entitled to an award of fees incurred in the efforts necessary to secure the contemnor's compliance with the court's order and to obtain compensation for damages done. *Far East Suppliers*, 682 F. Supp. at 1216.

The total fees sought by Del Monte total $550,225.50 for 1,276.4 hours billed. The fees it seeks span from June 5, 2017 through the present, including the hearing on June 30, 2020. Additionally, Del Monte seeks $453.90 in costs. Del Monte attached the Declaration of Zoltan Pinter, Esq. Mr. Pinter is the associate general counsel of the company that owns Del Monte. In his declaration, Mr. Pinter represents that all of the fees and costs for which Del Monte currently seeks an award from the Court have been paid in full by Del Monte (ECF No. 272-14). This declaration filed by Mr. Pinter lends further support to the award of attorneys' fees as they were an actual expense incurred as a result of Del Monte's pursuit of bringing about compliance with this Court's Judgment.

However, fees and costs are limited to the efforts expended that were necessary to secure the contemnor's compliance with the court's order and to obtain compensation for damages done.

*Far East Suppliers, inc.*, 682 F. Supp. at 1216. The record evidence supports the finding that Inprotsa had ceased the contemptuous behavior in April of 2018; fees incurred after that point are not fairly attributable to securing compliance with the court's order.

In terms of fees requested including filing of the Contempt Motion and those fees incurred prior to the Contempt Motion being filed, Del Monte seeks 77.3 hours for written discovery to Inprotsa, review of Inprotsa's documents and discovery, and a discovery hearing before Magistrate Judge Turnoff, for a total of $34,785.00; 24.8 hours for the preparation of the Declaration of Rodrigo Jimenez, for a total of $11,160.00; 48.1 hours for the Declaration of Patrick Gannon, for a total of $21,645.00; 78.3 for the deposition of Inprotsa officer, Jorge Gurria, for a total of $35,235.00; and 238.7 fours for researching, drafting, and preparing its Motion for contempt, for a total of $102,133.00. In total, for its pre-motion, and motion-related expenses it seeks 467.2 hours for a total of $204,958.00. Inprotsa does not dispute the reasonableness of the hourly rate of Del Monte's attorneys. I find that these fees were necessarily incurred in order to bring Inprotsa into compliance with this Court's Judgment. As such, I recommend a fee award of $204,958.00 in favor of Del Monte.

### IV.   CONCLUSION

Based on the foregoing, the undersigned **RESPECTFULLY RECOMMENDS** as follows:

1. Del Monte's Renewed Motion for Final Entry of Judgment of Contempt be GRANTED in part and DENIED in part;

2. That the Court Order Inprotsa to Show Cause whit it should not be held in contempt for violating the Court's Final Judgment by continuing to sell pineapples that resulted from Del Monte seeds above 7% between May 2017 and April 2018;

3. That the Court award Del Monte attorneys' fees and costs in the amount of $204,958.00.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to file objections by that date shall bar the parties from de novo determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. See 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; Patton v. Rowell, 2017 WL 443634 (11th Cir. Feb. 2, 2017).

**RESPECTFULLY SUBMITTED** in Chambers this 16th day of July, 2020.

_____
LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE

Cc: The Honorable Federico A. Moreno
Counsel of Record