UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-24275-CV-MORENO/LOUIS

INVERSIONES Y PROCESADORA
TROPICAL INPROTSA, S.A.,

      Petitioner,

vs.

DEL MONTE INTERNATIONAL GMBH,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** came before the Court upon Respondent's Renewed Motion for Proceedings Supplementary (ECF Nos. 125).[1] These matters are fully briefed and were referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable Federico A. Moreno, United States District Judge (ECF No. 220). An evidentiary hearing was conducted before the undersigned on June 2, 2020. Having carefully considered the motions, the record as a whole, and being otherwise fully advised in the premises, the undersigned issues the following recommendations.

### I.      BACKGROUND

These proceedings supplementary follow from a judgment entered confirming an international arbitration award. The Court granted Del Monte International GMBH's ("Del

---

[1] Unredacted Motion filed at ECF No. 135.

1

Monte") Cross-Petition to Confirm the Arbitral Award ("the Award") (ECF No. 47) against Inprotsa Y Procesadora Tropical Inprotsa, S.A. ("Inprotsa"). The Award ordered that Inprotsa pay Del Monte damages in the amount of $26,133,000.00, arbitral costs of $650,000.00, and legal representation costs and fees of $2,507,440.54, for a total amount of $29,290,440.54, plus pre-award and post-award interest (Award at ¶ 122).

In discovery proceedings in aid of execution, Del Monte discovered that Inprotsa had entered into three lease agreements with non-party Productadora y Exportadora de Frutas Verduras Fruver, S.A. ("Fruver"), which allowed Fruver to farm Inprotsa's lands in exchange for rental payments ("Fruver Contracts"). Del Monte moved to initiate proceedings supplementary pursuant to Florida Statute § 56.29 as applicable through Federal Rule of Civil Procedure 69 (ECF No. 125). *See Cuban Cigar Brands, N.V. v. Tabacalera Popular Cubana, Inc.*, No. 02-23124-CIV, 2008 WL 4279641, at *2 (S.D. Fla. Sept. 16, 2008). In this Motion, Del Monte seeks to seize the intangible contract rights that Inprotsa has as a result of its contracts with third-party Fruver.

### a. American Proceedings Supplementary

Judge Moreno referred the matter of whether to initiate proceedings supplementary to the undersigned (ECF No. 131). The undersigned issued a Report and Recommendations ("the Report") finding that Del Monte had met the requirements to initiate these proceedings supplementary and that this Court should not abstain in deference to the parallel Costa Rican proceedings because the Costa Rican proceedings had been stayed in deference to this Court and the Eleventh Circuit Court of Appeals (ECF No. 191).

Judge Moreno adopted the Report and Recommendations and set a discovery and briefing schedule as contemplated by Fla. Stat. § 56.29 (ECF No. 200), requiring Inprotsa to file an Order to Show Cause as to why its intangible contract rights should not be assigned to Del Monte or

seized by the U.S. Marshall and sold at judicial auction. Both parties filed briefings in accordance with Judge Moreno's scheduling order (ECF Nos. 219, 222, 224).

At a hearing conducted on March 12, 2020, Inprotsa's counsel represented that the Agrarian Court in Costa Rica, the lower Costa Rican court to which the Supreme Court of Costa Rica had remanded the matter after confirming the Arbitral Award, had issued an order bearing on the contracts at issue in the proceedings supplementary, but had not yet had time to obtain and translate it. After the hearing, Inprotsa filed a Motion to Terminate Proceedings Based on Mootness and International Comity (ECF No. 260) raising almost identical arguments as raised in its Show Cause Brief, and as such, the undersigned denied the Motion as duplicative (ECF No. 264). Subsequently, Inprotsa filed a Notice indicating that both parties agreed the matter should be decided on the papers and no evidentiary hearing was needed for this Court to issue a Report and Recommendation on the issue of proceedings supplementary (ECF No. 265).

**b. Costa Rican Proceedings**

Shortly after the hearing before the undersigned on March 12, 2020, Inprotsa filed a Notice with the court attaching the Agrarian Court's Orders untranslated in Spanish (ECF No. 245). In the Notice, Inprotsa represents that the Agrarian Court had entered three orders that require Fruver to pay any money owed to Inprotsa under the Fruver Contracts into a court administered bank account during the pendency of the litigation in Costa Rica. Likewise, it represented that Fruver had informed Inprotsa that Fruver had been served with a court order requiring it to retain and deposit into a certain bank account all rental amounts due to Inprotsa pursuant to the Fruver Contracts (ECF No. 245). Del Monte responded to the Notice (ECF No. 248) and contends that despite the Agrarian Court's Orders for Fruver to pay all monies due under the lease, that this Court should still enter an order assigning to Del Monte Inprotsa's right to be paid under the Fruver

Contracts.

Inprotsa then filed the above-described Motion to Terminate Proceedings Based on Mootness and International Comity (ECF No. 260), attached to which were the translated copies of the Costa Rican Agrarian Court's Orders. Del Monte has objected to the attached Agrarian Court Orders as being irrelevant (ECF No. 276), but did not object to any of the translations of the orders. Del Monte's objection was overruled, as relevant evidence is defined as having any tendency to make any fact at issue more or less probable than it would be without the evidence and the orders bear directly on the status of the Costa Rican proceedings. *See* Fed. R. Evid. 401.

In the second of the three orders filed by Inprotsa, the Agrarian Court ordered a "seizure decreed on . . . current accounts, savings accounts, term deposits, investments in the stock market, economic rights of Leasing contracts," among other things held by Inprotsa (ECF No. 260-2 at 7-8). A subsequent order by that court required all the rents associated with various leases, including the Fruver contracts, to be paid into a bank account designated by the Agrarian Court to facilitate the seizure (ECF No. 260-3 at 1-2).

## II. DISCUSSION

### a. Proceedings Supplementary Pursuant to Fla. Stat. § 56.29

Pursuant to § 56.29(6), a "court may order any property of the judgment debtor, not exempt from execution, or any property, debt, or other obligation due to the judgment debtor, in the hands of or under the control of any person subject to the Notice to Appear, to be levied upon and applied toward the satisfaction of the judgment debt . . . subject to applicable principles of equity, and in accordance with chapters 76 and 77 and all applicable rules of civil procedure" Fla. Stat. §56.29(6). The statute also delineates the procedures to initiate proceedings supplementary. Once proceedings supplementary have begun the parties are entitled to discovery; after discovery has concluded, the

4

proper procedural tool to decide the judgment creditor's rights is summary judgment. *Cuban Cigar Brands*, 2008 WL 4279641, at *2. The statute governing proceedings supplementary is "equitable in nature and should be liberally construed." *Longo v. Associated Limousine Services, Inc.*, 236 So. 3d 1115, 1118 (Fla. 4th DCA 2018). As discussed above, the Court has initiated proceedings supplementary, concluded discovery, both parties have filed briefing as considered by the statute, and the undersigned has held oral argument. As such, the matter is fully ripe for disposition.

Inprotsa avers that the Court lacks jurisdiction to seize the contractual rights at issue, that the Court lacks jurisdiction to order third-party Fruver to do anything, including pay Del Monte, and that Inprotsa's contract rights cannot be assigned to Del Monte or sold at auction because doing so would rewrite the terms of the lease agreement. Finally, it argues that this Court should defer to the parallel Costa Rican proceedings which have been resumed since the issuance of the undersigned's Report and Recommendations (ECF No. 191).

Del Monte contends that the Court does have jurisdiction to seize the intangible property rights because it has *in personam* jurisdiction over Inprotsa. It argues that the jurisdictional analysis does not rest on whether this Court can order third-party Fruver to act, nor does it matter whether the contracts were agreed to in Costa Rica; it matters only whether the Court has jurisdiction over Inprotsa, which it obviously does. It also avers that this Court should not defer to the Costa Rican proceedings because the only remedy it has sought in Costa Rica is neither inconsistent nor duplicative with the relief it seeks here because it has only sought interim relief to prevent Inprotsa from engaging in fraudulent transfers of its title or ownership interest in the plantations pending a ruling from the Costa Rican Supreme Court. However, the Court notes that the interim relief was entered in September of 2019, and since that time much has transpired in the Costa Rican proceedings.

Inprotsa replied and reiterated its jurisdictional challenge and clarified that it seeks abstention only to the extent that this Court would rule on Del Monte's petition for proceedings supplementary.

## III.    ANALYSIS

As a threshold matter, Del Monte avers that the Court has jurisdiction to order Inprotsa to act on its intangible property rights outside of this District because the Court has *in personam* jurisdiction over Inprotsa. It cites to a string of cases that stand for the proposition that courts sitting in equity have the authority to compel a defendant to turn over property located outside of its jurisdiction, so long as the court has jurisdiction over the party. *See French v. Hay*, 89 U.S. 250, 252-53 (1874); *Carpenter v. Strange*, 141 U.S. 87 (1891); *Fall v. Eastin*, 215 U.S. 1 (1909). While this may be true, and there is no denying that this Court has jurisdiction over Inprotsa, Del Monte's argument fails because Inprotsa no longer owns the rights to the Fruver Contracts as those rights have been seized by the Agrarian Court of Costa Rica and that court has ordered any proceeds from those contracts to be placed in a court administered bank account. Therefore, this case is not similar to those advanced by Del Monte because there is nothing, at this point, which Inprotsa has the ability to turn over.

Despite this, Del Monte avers that it is entitled to judgment on the intangible property rights associated with those contracts, that is, the right to collect lease payments under the contract. Del Monte concedes that this Court does not have the power to re-write the contract, nor does it have the power to effectively create a novation where the rights and duties of Inprotsa are conferred upon Del Monte. Nonetheless it suggests that this Court should award it any right to receive money under the contracts. However, in doing so, this Court would be either doing that which Del Monte

concedes this Court cannot do or effectively levying a writ of garnishment on the bank account, which the Agrarian Court has ordered all funds under the Fruver Contracts be deposited.

The Costa Rican Agrarian Court's second order states that it is seizing Inprotsa's "economic rights of Leasing contracts" and further states any funds under those contracts must be deposited into a court registry (ECF No. 260-2 at 8). Del Monte cites *Gen. Elec. Capital Corp. v. Advance Petroleum, Inc.*, 660 So. 2d 1139 (Fla. 3d DCA 1995), where the court ordered an airplane subject to a fuel lien flown back into the court's jurisdiction so it could act on the airplane. Here, unlike in that case, there exists no property which this Court could order Inprotsa to turn over to Del Monte. A third-party sovereign has assumed control and jurisdiction over those property rights. Thus, the only way by which this Court could allow Del Monte to reach those funds would be through a writ of garnishment on the bank account in which they have been deposited, such a move, though, would be in contravention of Florida law.

### i.     A Writ of Garnishment Would Be Improper

Chapter 77 of the Florida Statutes prescribes the procedure for issuance and enforcement of writs of garnishment. The Florida garnishment statute specifically provides that it applies to any "tangible or intangible personal property of defendant in the possession or control of a third person." Fla. Stat. § 77.01. While Del Monte has never formally sought a writ of garnishment under this Chapter, it has implicitly sought one through its proceedings supplementary. However, all the funds are held outside of the state of Florida and, thus, are beyond the reach of a Florida writ of garnishment.

A garnishment proceeding "is not an action *in personam*, nor is it, strictly speaking, a proceeding *in rem*. Partaking of the nature of both, it is frequently classified as a proceeding *quasi in rem*." *Stansell v. Revolutionary Armed Forces of Columbia (FARC)*, 149 F. Supp. 1337, 1339

(M.D. Fla. 2015) (quoting *U.S. Rubber Co. v. Paage*, 297 F.2d 670, 673 (5th Cir. 1962). Because of the dual nature of a garnishment proceeding, courts sitting in this state have held that a court presiding over a writ of garnishment must not only have personal jurisdiction over the garnishee, but also jurisdiction over the property or "*res*" that is the subject of the writ of garnishment. *Id.* While personal jurisdiction may be waived, *in rem* jurisdiction is a very special type of necessary judicial subject matter jurisdiction under Florida law – one that cannot be waived. *Center Capital Corp. v. Gulfstream Crane, LLC*, Case No. 09-61021-CIV, 2009 WL 4909430, at *7 (S.D. Fla. Nov. 25, 2009) (holding that a party cannot waive *in rem* jurisdiction under Florida law, and a court proceeding pursuant to *in rem* jurisdiction must actually possess *in rem* jurisdiction over the property that is the subject of the matter").

The undersigned finds *Sargeant v. Al-Saleh*, 137 So.3d 432 (Fla. 4th DCA 2014) instructive on the matter. There, a creditor filed a motion for proceedings supplementary to execution pursuant to Fla. Stat. § 56.29. The motion sought to compel the debtors to turn over all stock certificates and similar documents memorializing their ownership interest in any corporation. The debtors opposed the motion because the certificates were located abroad, and therefore the court lacked jurisdiction to compel the turnover. The trial court granted the motion and an appeal was taken. On appeal, the appellate court reversed the trial court's order because it found that the trial court lacked the authority to order the debtors to turn over the foreign stock certificates. In so finding, the appellate court relied on two public policy principals. First, that there may be competing claims to the foreign assets and "claims against a single asset should be decided in a single forum – and . . . that forum should be, as it traditionally, has been, a court of the jurisdiction in which the asset is located." *Id.* at 435. Second, the appellate court found that allowing trial courts to compel judgment debtors to bring out-of-state assets into Florida would effectively eviscerate the

domestication of foreign judgment statutes. *Id.* Here, the appellate court's concerns in *Sargeant* would be reality: this Court's granting of Del Monte's Motion would create a very real possibility of competing claims over the same assets as the Costa Rican Court because that court has seized the intangible contract rights at issue. Thus, the proper forum for this dispute to be decided is in Costa Rica, where the contract, the parties, and the rights are all located. Second, if this Court seized those rights, it would effectively be eviscerating the need for the confirmation of the Arbitral Award in Costa Rica. That award has since been confirmed in Costa Rica and Del Monte has articulated no reason why this Court's intervention is needed to proceed further on the Proceedings Supplementary. Because this Court is without the jurisdiction to levy a writ of garnishment on the bank accounts in Costa Rica, the undersigned respectfully recommends that Del Monte's Motion to Seize Inprotsa's Intangible Property Rights be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to file objections by that date shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017).

**RESPECTFULLY SUBMITTED** in Miami, Florida this 5th day of August, 2020.

LAUREN FLEISCHER LOUIS
UNITED STATES MAGISTRATE JUDGE

9