UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 16-24275-CIV-MORENO**

INVERSIONES Y PROCESADORA
TROPICAL INPROTSA, S.A., a Costa Rican
Corporation,

        Petitioner,

vs.

DEL MONTE INTERNATIONAL GMBH, a
Swiss Corporation,

        Respondent.
_____/

## ORDER ADOPTING REMAINING PORTIONS OF MAGISTRATE JUDGE LOUIS'S JULY 16, 2020 REPORT AND RECOMMENDATION AND ORDER FINDING PETITIONER IN CONTEMPT

THE MATTER was referred to the Honorable Lauren F. Louis, United States Magistrate Judge, for a Report and Recommendation on Respondent's Renewed Motion for Contempt (D.E. 229). The Magistrate Judge filed a Report and Recommendation **(D.E. 75)** on **July 16, 2020**. On October 30, 2020, the Court adopted the Report and Recommendation in part, deferring ruling on the Magistrate Judge's recommendations as to sanctions. The Court adopted her recommendation to issue a separate Order to Show Cause as to petitioner, Inversiones y Procesadora Tropical, INPROTSA, S.A. as to why it should not be held in contempt for its noncompliance with the Court's Final Judgment. INPROTSA, S.A. filed a response to the Order to Show Cause on November 16, 2020. The Court now reviews INPROTSA's response to the Order to Show Cause and the remaining recommendations in the July 16, 2020 Report and Recommendation regarding sanctions. The Court has reviewed the entire file and record. The Court has made a *de novo* review of the issues that the objections to the Magistrate Judge's Report and Recommendation

present, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the remaining portions of United States Magistrate Judge Lauren F. Louis's Report and Recommendation are **AFFIRMED** and **ADOPTED** as set forth in this Order.

I. **Background**

On October 30, 2020, this Court issued an Order to Show Cause to Petitioner, INPROTSA, S.A. to show cause why it should not be held in contempt for its failure to comply with this Court's Order Confirming the Arbitral Award and Final Judgment. The Court's Order confirmed an arbitral award, which contained a monetary award and two injunctions. The Court also entered final judgment for the reasons stated in the confirmation order in favor of the Respondent Del Monte.

INPROTSA's noncompliance with the injunctions is at issue in these contempt proceedings. The first injunction ordered INPROTSA to "return or destroy 93% of the MD-2 [pineapple] vegetative materials in [INPROTSA's] farm" (the "destruction injunction") and the second enjoined INPROTSA "'from selling MD-2 pineapples to third parties for as long as [INPROTSA] shall not have fully complied with its obligation to destroy or return the MD-2 vegetative materials,' with the exception of sales in amounts not exceeding 7% of each MD-2 harvest" (the "sales injunction"). It is undisputed that INPROTSA did not comply from May 2017 to April 2018. INPROTSA did not destroy or return the seeds and once the pineapples were grown, it elected to sell them to a third-party until at least April 2018.

The Order to Show Cause finds that Respondent Del Monte International, GmbH met its burden to show by clear and convincing evidence that the alleged contemnor, INPROTSA, S.A., violated the Court's prior confirmation order and final judgment. It required INPROTSA to show

cause why it should not be held in contempt for its noncompliance and directed INPROTSA to advise the Court if it requested an additional evidentiary hearing. In response to the order, INPROTSA consented to Del Monte's Motion for Contempt being determined by the Court on the existing evidentiary record, without a further evidentiary hearing.

INPROTSA's response to the show cause order incorporates by reference the transcript of INPROTSA's closing argument at the evidentiary hearing conducted by Magistrate Judge Louis, INPROTSA's final brief concerning Respondent's Renewed Request for Finding of Contempt (D.E. 261), INPROTSA's Objections to the Magistrate Judge's Report and Recommendation (D.E. 292), and INPROTSA's Notice of Filing Supplemental Authority, *Liu v. S.E.C.*, 140 S. Ct. 1936 (June 22, 2020). Del Monte seeks a final judgment of civil contempt based on INPROTSA's failure to destroy the plants immediately and based on its decision to sell the pineapples to a third-party, in violation of the sales injunction.

In addition to issuing the Order to Show Cause on October 30, 2020, the Court also issued an Order Adopting in part the Magistrate Judge's Report and Recommendation (ECF 297 & 287). The Court stopped short of adopting Judge Louis's recommendations regarding the proper award of sanctions until after INPROTSA had an opportunity to show cause as to its noncompliance. Specifically, the Court deferred ruling on whether disgorgement of revenues is a proper measure of damages for contempt and on whether an award of attorney's fees to Del Monte is appropriate. The Court must now decide whether INPROTSA shows cause to excuse its noncompliance, and if it fails to show cause, what are the appropriate sanctions.

## I.    Legal Standard and Analysis

Once a party meets its burden to show by "clear and convincing evidence that the alleged contemnor violated a court's earlier order," the burden shifts "to the alleged contemnor to

produce evidence explaining [its] noncompliance at a show cause hearing." *Peery v. City of Miami*, 977 F.3d 1061 (11th Cir. 2020) (quoting *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998)). "The clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *Id.* (quoting *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1296 (11th Cir. 2002)). The Court must construe ambiguities in favor of the party charged with contempt. *Id.* (citing *F.T.C. v. Leshin*, 618 F.3d 1221, 1231 (11th Cir. 2010)).

Del Monte seeks contempt sanctions for INPROTSA's violation of this Court's May 17, 2017 final judgment, which was issued after the Court confirmed an arbitral award in this matter. There is no dispute in this case that INPROTSA did not comply with either the destruction or sales injunctions. INPROTSA, however, raises arguments that the order was unlawful because the Court lacks the power to enforce an extraterritorial mandatory injunction. Second, INPROTSA argues the order was not clear and unambiguous such that its failure to comply should result in contempt of Court. Finally, INPROTSA argues that it could not comply with the Court's order because doing so would violate Costa Rican law. If INPROTSA's arguments do not excuse its noncompliance, the Court must determine whether the appropriate remedy is disgorgement of revenues and an award of attorney's fees.

A. *Civil Contempt*

1. *Was the Court's order lawful and valid?*

INPROTSA argues the Court cannot find it in contempt because the Court lacked authority to enter an order containing an extraterritorial mandatory injunction. Put another way, INPROTSA argues it cannot be found in contempt for violating an unlawful injunction. In this case, the Court confirmed an arbitral award, which included two injunctions – a sales injunction

4

and a destruction injunction. This Court adopted the Magistrate Judge's Report and Recommendation on this issue prior to ordering INPROTSA to show cause. The Court, nevertheless, revisits the argument to determine if it excuses INPROTSA's noncompliance.

Responding to the show cause order, INPROTSA first asserts that confirmation of the award is a separate issue from a court's power to enforce all or part of the award. Relying on *Four Seasons Hotels & Resorts B.V. v. Consorcio Barr, S.A.*, 613 F. Supp. 2d 1362, 1365-66 (S.D. Fla. May 12, 2009), INPROTSA argues that a court's duty to confirm an arbitral award does not always match its power to enforce the same award. In a confirmation proceeding, the Court has a narrow scope of review allowing it to either accept or reject confirmation of an award, and INPROTSA suggests that this Court's power ends there. *Four Seasons* does not support INPROTSA's position. Rather, it confirms an arbitral award even if the specific performance mandate might be contrary to Venezuelan law or even if the court could not enforce a judgment pertaining to activities in a foreign country. The posture of this case is different, where the Court converted its order confirming an arbitral award into a judgment, which is provided for in the statute. It states that upon confirmation of an arbitral award, the "judgment shall be docketed as if it was rendered in an action. The judgment so entered shall have the same force and effect, in all respects, as and be subject to all the provisions of the law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered." 9 U.S.C. § 13.

In her Report and Recommendation, which this Court adopted, Magistrate Judge Louis examined this argument. Because the Court confirmed the award and converted it into a judgment, the Court could "enforce the judgment by punishing the parties who violated the judgment through contempt or enforcement proceedings." Report and Recommendation (ECF

191). The adopted report adds that "[i]ssuing contempt sanctions for violation of this Court's Judgment does not, as INPROTSA contends, implicate exercising jurisdiction over foreign parties or assets, and it is without dispute that this Court has jurisdiction over INPROTSA." Report and Recommendation (ECF 191).

INPROTSA's acceptance of personal jurisdiction here also discredits its argument that the Court has no power of enforcement. Because the Court has personal jurisdiction over INPROTSA, an order of this Court requiring INPROTSA to act or refrain from acting anywhere is valid. *See, e.g., Fall v. Eastin*, 215 U.S. 1, 8 (1909) (court can order party over which it has *in personam* jurisdiction "to do or refrain from doing" an act even if the act is to occur in another state or country). Certainly, the Court can enforce an injunction that prohibited INPROTSA from selling pineapples to a third-party.

This Court has also previously examined INPROTSA's argument that the destruction and sales injunctions are akin to *Mareva* injunctions, which are extraterritorial pre-judgment prohibitive orders preventing litigants from dissipating assets worldwide. *Grupo Mexicano de Desarollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 328-29 (1999). This Court already found that the injunctions at issue here are post-judgment injunctions, which differ from *Mareva* injunctions. Especially with respect to the sales injunction, the Court does not find that it is sufficiently similar to a *Mareva* injunction, so as to excuse INPROTSA's noncompliance with a post-judgment order, which was affirmed on appeal.

Despite these findings INPROTSA again explains its noncompliance with the injunctions by stating that the Court lacked jurisdiction to enforce them. INPROTSA categorizes them as one in the same describing them as only one injunction containing two parts, one contingent on the other. It argues that if the destruction injunction to destroy the vegetative material is invalid,

then any derivative interim requirement to pick, pack, deliver and sell that material to Del Monte while the plants are being destroyed is also invalid. INPROTSA's position is that the injunctions are inextricably intertwined because the duration of sales to Del Monte is contingent on the destruction of the plants. The Court does not agree that the injunctions are inextricably intertwined. Indeed, the structure of the injunctions suggests if INPROTSA elected not to comply with the destruction injunction, then alternatively it was prohibited from selling 93% of the pineapple product to third-parties (which is what it did by selling the pineapples to Fruver).

Finally, this Court has previously held that INPROTSA's jurisdictional argument is "too little too late." This Court reiterates that INPROTSA cannot explain its noncompliance now by asserting a lack of jurisdiction, when it did not raise the argument in the original proceedings or in the Court of Appeals. INPROTSA argues that it was not until this enforcement proceeding that it was proper to raise this argument. The Court disagrees. Although INPROTSA is correct that the Court's jurisdiction to enforce an injunction is not grounds for consideration under the New York Convention for vacating or confirming an award, INPROTSA could have raised the argument in the confirmation proceeding. Rather than argue then that the Court lacked jurisdiction to enter final judgment on the terms of the arbitral award, INPROTSA waited to raise the issue until this contempt proceeding, after the Court of Appeals affirmed the judgment. The Federal Arbitration Act makes clear that to be enforced as a civil judgment, an award subject to the Convention . . . must first be confirmed and converted into a judgment by a court." *Del Monte Int'l GmbH v. Ticofrut, S.A.*, No. 16-23894-CIV, 2017 WL 2901326, at *5 (S.D. Fla. Jan. 30, 2017) (citing 9 U.S.C. § 13). The proper time to object to the Court's jurisdiction to enter the injunctions was when the Court entered final judgment, not in a post-judgment, post-appeal contempt proceeding.

This Court reaffirms its prior finding that this jurisdictional argument cannot be raised as a defense in a collateral proceeding. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009) (quoting *Willy v. Coastal Corp.*, 503 U.S. 131, 137 (1992) ("[T]he practical concern with providing an end to litigation justifies a rule preventing collateral attack on subject matter jurisdiction.")); *Beck v. Boce Grp.*, 04-20683-CIV, 2005 WL 8155884, *2, n.3 (S.D. Fla. Jun. 15, 2005) (finding defendants' argument stating that contempt cannot be found if the underlying order is invalid "moot" because underlying injunction was issued by court order and subsequently reaffirmed.). Res judicata would be "short-circuited" if courts were to evaluate the jurisdiction that they may or may not have had to issue final judgment. *In re: Optical Technologies, Inc.*, 425 F.3d 1294, 1308 (11th Cir. 2005).

Res judicata principles also defeat INPROTSA's reliance on *U.S. Steel Corp. v. United Mine Workers*, 519 F.2d 1236, 1249 (5th Cir. 1975) and *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 35, 374 (5th Cir. 2003). INPROTSA argues it cannot be held in contempt for violating an invalid injunction as set forth in these cases. In these cases, however, the appellate courts evaluated both the validity of the injunctions at issue and the ensuing contempt orders. *See U.S. Steel*, 519 F.2d at 1249 (holding that district court lacked jurisdiction to enter injunction and that union could not be found in contempt of that order); *Karaha Bodas*, 335 F.3d at 374 ("[T]he only district court order that should be subject to review on appeal to us is the preliminary injunction. By reversing and vacating the preliminary injunction, we addressed the substantive provisions of the contempt order. . . thereby making it unnecessary for us to address now the contempt order itself."). Here, the judgment of this Court has already been reviewed and affirmed on appeal. The principles of *res judicata* would preclude

the Court from revisiting the validity of the injunctions as was the procedural posture in both *U.S. Steel Corp.* and *Karaha Bodas.*

### 2. Was the Court's order clear and unambiguous?

In defense of its noncompliance, INPROTSA again argues that even if the Court did not lack the equitable power to issue the extraterritorial injunctive relief, this is a complex jurisdictional issue of first impression, and the Court's order was not clear and unambiguous. INPROTSA's argument is not that it did not understand what the injunctions required, but rather that there was a legal ambiguity with respect to the enforceability. *See Drywall Tapers and Pointers of Greater New York Local 1974 of IBPAT AFL-CIO v. Local 530 of Operative Plasterers & Cement Masons Int'l Assoc.*, 889 F.2d 389, 395 (2d Cir. 1989) (stating that order is clear and unambiguous if a party can "ascertain from the four corners of the order precisely what acts are forbidden."). Thus, INPROTSA's legal ambiguity argument is insufficient to explain its noncompliance. Indeed, INPROTSA did not contest the clarity or ambiguity of the injunctions in the confirmation proceeding, or on appeal. Certainly, it understood what it was supposed to do and what it was prohibited from doing. It chose to sell the pineapples in violation of the injunction.

It is "established doctrine that persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *GTE Sylvania Inc. v. Consumers Union of the United States, Inc.*, 445 U.S. 375, 386 (1980). "INPROTSA has advanced no evidence that it acted diligently in attempting to destroy the pineapples or sell them to Del Monte, in fact the opposite has been shown: INPROTSA knew of the injunctions, knew that it had been ordered to destroy the pineapples or sell them only to Del Monte, and chose instead to farm them as it

9

normally would and sell them to third-party Fruver in hopes that it would win at the appellate level." Report and Recommendation (ECF 287). The Court therefore reaffirms its prior finding that the judgment was valid and lawful as well as clear and unambiguous. This defense to contempt does not excuse INPROTSA's noncompliance.

### 3. *Was INPROTSA able to comply with the Court's order?*

To excuse its noncompliance, INPROTSA reasserts its position that it was factually unable to comply because doing so would violate Costa Rican law. This Court adopted the Magistrate Judge's Report and Recommendation (ECF 287) on this point, and again finds that INPROTSA's purported inability to comply with the injunctions does not excuse its noncompliance. This finding is even more compelling now that the Supreme Court of Costa Rica has confirmed the arbitral award. When first arguing this point, INPROTSA relied on the testimony of its president, Jorge Luis Gurria Hernandez, who explained that INPROTSA needed to make the sales notwithstanding the injunction and justified doing so because the confirmation proceedings were then stayed in courts in Costa Rica and pending on appeal here. The appeal here affirmed the confirmation order and final judgment, and now that there is a confirmation order in Costa Rica, the justification provided by INPROTSA then is now proven unfounded. This Court was correct to find the justification did not preclude the issuance of an order to show cause and does not now excuse INPROTSA's noncompliance.

In any event, the Court again finds that even if INPROTSA could not comply with the destruction injunction, it *chose* not to comply with the sales injunction. Neither the pending appeal nor the stay in Costa Rica at the time obligated INPROTSA to sell the pineapples to Fruver in violation of the injunction. Rather, as the Magistrate Judge aptly pointed out in her Report and Recommendation, INPROTSA chose not to destroy the pineapples, and chose to sell

10

them to a third party. The Court finds INPROTSA's decision to sell the pineapples to Fruver does not equate with an inability to comply. Therefore, the Court does not excuse INPROTSA's noncompliance based on this argument.

### B. *Sanctions*

This Court stopped short of adopting the July 16, 2020 Report's recommendations as to the appropriate remedy to address INPROTSA's contempt. The civil contempt power may be used to "coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. United Mine* Workers, 330 U.S. 258, 303-04 (1947). In her Report, the Magistrate Judge appropriately found that there is no argument that INPROTSA needs to be coerced into compliance since both parties admit the vegetative material has since been destroyed. The remaining issue is the measure of compensation to Del Monte, which the parties dispute. Del Monte seeks an award equal to INPROTSA's disgorgement of gross revenues of its sales of the pineapples during the relevant period, which is $16,373,684. INPROTSA argues the appropriate damages award equals the losses Del Monte suffered, and since it has not shown proof of loss, it is not entitled to any disgorgement.

The July 16, 2020 Report and Recommendation recommends the Court not award disgorgement of revenues or lost profits. The complainant, Del Monte, bears the burden of producing evidence sufficient to show damages based on the contempt. *See In re: Chase & Sanborn Corp.*, 872 F.2d 397, 401 (11th Cir. 1989).

The Magistrate Judge found that disgorgement of revenues was not a proper remedy, and that "Del Monte has failed to show by clear and convincing evidence that its measure of damages is equal to INPROTSA's gross revenues." Report and Recommendation (ECF 287 at 13). In its objections, Del Monte relies on *Liu v. SEC,* 140 S. Ct. 1936 (2020) to argue that disgorgement of gross sales proceeds is the proper remedy. *Liu*, however, recognizes that while "courts

11

recognize[] that the wrongdoer should not profit by his own wrong, they also recognized the countervailing equitable principle that a wrongdoer should not be punished by paying more than a fair compensation to the person wronged." *Id.* at 1943. The Supreme Court emphasized that a remedy "tethered to a wrongdoer's net unlawful profits, whatever the name, has been a mainstay of equity court." Examining the contours of equity jurisprudence, the Supreme Court recognized that federal courts have the power to order disgorgement of profits, as Del Monte suggests, but it also compared disgorgement to restitution that simply "'restor[es] the status quo,' thus situating the remedy squarely within the heartland of equity." *Id.* (quoting *Tull v. United States*, 481 U.S. 412 (1987)).

Relying on *F.T.C. v. Leshin,* 618 F.3d 1221, 1239 (11th Cir. 2010) and *Guyana Tel. & Tel. Co., Ltd. v. Melbourne Int'l Comms., Ltd.*, 329 F.3d 1241, 1249 (11th Cir. 2003), Del Monte argues disgorgement of revenues is the proper measure of damages for contempt. The Magistrate Judge, however, correctly identified that in *Leshin* the contemnors had taken compensation from consumers and were ordered to disgorge those monies back to the consumers as compensation for their losses. Here, the Magistrate Judge reasoned that Del Monte did not pay INPROTSA any sum of money, which INPROTSA would need to now disgorge. The issue raised in Del Monte's objection is that the Magistrate Judge misread the sales injunction to require sales to Del Monte, and instead the injunction prohibits sales to anyone. Based on this misreading, Del Monte asserts that the Magistrate Judge incorrectly concluded that damages should be akin to those for breach of contract as opposed to the appropriate remedy, which it claims is disgorgement. Regardless of how one reads the sales injunction, Del Monte did not pay monies to INPROTSA, which should now be returned. That was the factual scenario presented in *Leshin*, which is not present here.

Del Monte also asserts that INPROTSA as a "conscious wrongdoer" is liable for either the "fair market value of the goods and services (restitutionary remedy) or the proceeds of the sale (disgorgement remedy), and [Del Monte] is entitled to the higher." *Guyana*, 329 F.3d at 1249. *Guyana*, however, was not a contempt proceeding, but rather a Florida Deceptive and Unfair Trade Practices Act case, where the court was deciding on a legal remedy, not an equitable one. In any event, both *Leshin* and *Guyana* precede the Supreme Court's recent decision in *Liu*, which clarifies the limits of this Court's equitable powers.

Del Monte's objections to the Report and Recommendation argue that the law of the case establishes disgorgement as the proper measure of damages. It bases this argument on language in a January 24, 2019 Report and Recommendation, which this Court adopted. (ECF 191 and 200). The January 24, 2019 Report stated that Del Monte was "damaged by loss of the benefit of its bargain with INPROTSA." The adopted report also states that INPROTSA should "show cause why the Court should not hold them in contempt for failing to comply with the Court's Final Judgment by making sales of MD-2 pineapples in violation of the permanent injunction of the Award, and *order sanctions, including monies INPROTSA improperly received as a result of its sales made after the entry of the Court's final judgment." Id.* (ECF 191). Del Monte argues that the July 16, 2020 Report and Recommendation contravenes the law of the case established in this Court's order adopting the January 24, 2019 report, which in its view ordered disgorgement. This Court disagrees.

The Order adopting the January 24, 2019 report was not a final order sanctioning INPROTSA. On the contrary, it was a preliminary order instructing INPROTSA to show cause why disgorgement of revenues is improper. That is what INPROTSA has done- shown cause that Del Monte's requested remedy is improper. Even if the Court's order can be viewed as

predetermining the appropriate sanction, which it does not, the order predated the Supreme Court's issuance of *Liu*, which provides the framework for this Court to now decide the appropriate remedy.

Using *Liu*'s principles, the Court next examines whether the record evidence establishes the harm to Del Monte and how to quantify the appropriate remedy. The record evidence does not establish by clear and convincing evidence how Del Monte was damaged. It only establishes that during the relevant period INPROTSA had revenues of over $16 million, and Del Monte has not met its burden to show that INPROTSA profited. Indeed, INPROTSA contends it operated at a loss during the time between entry of the judgment on the award and the destruction of the pineapples. Because Del Monte does not show by clear and convincing evidence that it suffered losses or that INPROTSA profited and would be keeping its ill-gotten gains, the Court declines an award of disgorgement to Del Monte. Even if Del Monte lost the benefit of its bargain, the evidence does not quantify that loss. Accordingly, the Court adopts the Report and Recommendation and declines to sanction INPROTSA by awarding damages exceeding $16 million. To rule otherwise would contravene the Supreme Court's instruction in *Liu*, which states that "a wrongdoer should not be punished by paying more than a fair compensation to the person wronged."

E. Attorney's Fees

Having adopted the Report and Recommendation's finding that disgorgement is not an appropriate remedy, the Court examines whether the recommendation on attorney's fees is appropriate. Generally, when a movant seeks a contempt order to force compliance with a lawfully entered order, the movant is entitled to recover reasonable attorney's fees and expenses cause by the contemnor defendant's contempt. *Belize Telecom. Ltd. v. Gov't of Belize*, No. 05-

20470, 2005 WL 7858276, *8 (S.D. Fla. Apr. 13, 2005) ("Plaintiffs are entitled to reasonable attorneys' fees and expenses caused by Defendant's contempt."); *U.S. v. Far East Suppliers, Inc.*, 682 F. Supp. 1215, 1216-17 (S.D. Fla. 1988) (finding an award of fees and costs appropriate where there is willful disregard of a court's order.

The evidentiary record shows that INPROTSA did not stop selling the MD-2 pineapples until April 2018, after Del Monte had filed its Motion for Contempt, but before INPROTSA had responded to that Motion. Therefore, the Motion was sufficient to, and successful in, ending the contemptuous behavior. The Court, therefore, agrees with the Report and Recommendation that an award of attorney's fees is appropriate in the amount incurred by Del Monte to secure INPROTSA's compliance with the Court order. *Far East Suppliers*, 682 F. Supp. at 1216.

Del Monte seeks $550,225.50 for 1,276.4 hours billed from June 5, 2017 to July 16, 2020. The declaration of Mr. Pinter, the associate general counsel of the company that owns Del Monte, shows that Del Monte paid those fees, establishing this as an expense incurred in having to bring the contempt proceedings. The Magistrate Judge correctly concluded that the award of fees ends when the contemptuous behavior ended in April 2018. Therefore, her reduction of the fees award to $204,958 is appropriate.

DONE AND ORDERED in Chambers at Miami, Florida, this _9th_ of August 2021.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

United States Magistrate Judge Lauren F. Louis

Counsel of record